**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO**

| | |
|---|---|
| HN1 THERAPY NETWORK OF PUERTO RICO, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ASOCIACIÓN PUERTORRIQUEÑA DE FISIOTERAPIA, INC., REGINA RIVERA CARDE, RAPHAEL MELÉNDEZ PÉREZ, ONEIDA RODRÍGUEZ CARABALLO, AND PEDRO PIÑERO<br><br>    Defendants, | CIVIL NO. 3:10-cv-1404<br><br>RE: UNREASONABLE RESTRAINT OF TRADE; GROUP BOYCOTT; PRICE-FIXING; TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS; PRELIMINARY AND PERMANENT INJUNCTION.<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

**VERIFIED COMPLAINT**

TO THE HONORABLE COURT:

    COME NOW Plaintiff, HN1 Therapy Network of Puerto Rico, LLC d/b/a Therapy Network of Puerto Rico ("TNPR"), through undersigned counsel, and very respectfully alleges and prays as follows:

**I.
NATURE OF THE ACTION, JURISDICTION AND VENUE**

    1. This action seeks to stop Asociación Puertorriqueña de Fisioterapia, Inc.'s ("APF"), its members and the individual defendants from conducting group boycott activities through declaratory judgment, injunctive relief and imposition of damages.

    2. This Court has jurisdiction over the case's subject matter pursuant to 28 U.S.C.A. § 1331, insofar as this action seeks to redress ongoing violations of Section 1 of the Sherman Act, 15 U.S.C. §1. This Court also has jurisdiction pursuant to 28 U.S.C.A. § 1332, insofar as there is complete diversity between Plaintiff and

Defendants. This Court also has subject matter jurisdiction over the pendant state law claims pursuant to 28 U.S.C. 1367. This action is also a request of declaratory judgment pursuant to F.R.Civ.P. 57 and 28 U.S.C.A. § 2201.

3. This Court has personal jurisdiction over APF, its members and the individual defendants because it committed boycott activities and tortious actions in this district, directed such actions to plaintiff in this district and because APF has its principal place of business in this district.

4. Plaintiff's request for monetary compensation in this action exceeds $75,000,000.

5. Venue is proper in this district under 28 U.S.C. 1391 because the events that gave rise to the claims occurred in this judicial district.

6. TNPR brings this action for equitable and other relief against Asociación Puertorriqueña de Fisioterapia, Inc ("APF") and the rest of the Defendants to:

> (a) restrain APF, its members and the individual defendants from its ongoing group boycott activities in violation of Section 1 of the Sherman Act, 15 U.S.C. §1 and the Laws of Puerto Rico, 10 L.P.R.A. § 257 *et seq.*;
>
> (b) enjoin APF, its members and the individual defendants from tortiously interfering with TNPR's contracts with: i) outpatient therapy service providers and other service providers; and ii) MMM Healthcare, Inc. and PMC Medicare Choice, Inc., and,
>
> (d) request compensation for damages.

2

## II.
## PARTIES

7. Plaintiff, TNPR is responsible for arranging for the provision of specialty care services in the Commonwealth of Puerto Rico. TNPR is a Limited Liability Company organized, existing under the Laws of the State of Florida. TNPR's principal place of business is in 801 E. Hallandale Beach Blvd., Suite 200 Hallandale, FL 33009. TNPR is authorized to conduct business in Puerto Rico.

8. Defendant, APF is an incorporated association organized and existing under the Laws of the Commonwealth of Puerto Rico. Upon information and belief, APF is a non-profit corporation whose purpose is to group outpatient therapy service providers in Puerto Rico, for among other things, exchange scientific, educational and professional information, and promote any legitimate activities for the benefit of APF. APF's postal address is: G.P.O. Box 366272, San Juan, P.R. 00936-6272; Telephone/Fax: (787) 754-8509. Upon information and belief, APF has approximately seventy five (75) members who are outpatient therapy service providers in Puerto Rico. Except to the extent that competition has been restrained as alleged here, some or all of APF's members compete with each other in the business of providing outpatient therapy services.

9. Defendant, Regina Rivera Carde is a member of APF and its President. Upon information and belief, Ms. Rivera Carde is a licensed therapist. Rivera Carde, APF, the rest of Defendants and other members of APF committed the anticompetitive and tortious act described herein. Ms. Rivera Carde's address is: Emerito Estrada 1486 San Sebastian, PR, 00685; Phone: 787-896-0459; Fax: Same.

10. Defendant, Oneida Rodríguez Caraballo, is a member of APF and its Vice President. Upon information and belief, Ms. Rodríguez Caraballo is a licensed therapist. Rodríguez Caraballo, APF, the rest of Defendants and other members of APF committed the anticompetitive and tortious act described herein. Ms. Rodríguez Caraballo's address is: Calle 75 Infantería Esquina Victoria, Lajas, PR, Lajas, 00667. Ms. Rodríguez Caraballo also has this address: BO. Sabana Yeguas Carr 116 KM 1.9 Lajas PR 00667; Phone: 787-899-8006 Fax: same.

11. Defendant, Raphael Meléndez Pérez, is a member of APF and its Secretary. Upon information and belief, Mr. Meléndez Pérez is a licensed therapist. Meléndez Pérez, APF, the rest of Defendants and other members of APF committed the anticompetitive and tortious act described herein. Mr. Meléndez Pérez's address is: San Lorenzo Shopping Center, Local 4-B, San Lorenzo PR 00754; Phone: 787-715-0420 Fax: 787-736-1090.

12. Defendant, Pedro Piñero, is a member of APF. Upon information and belief, Mr. Piñero is a licensed therapist. Piñero, APF, the rest of Defendants and other members of APF committed the anticompetitive and tortious act described herein. Pedro Piñero's address is: Po Box 1731 Isabela, PR 00662-1731; Phone: 787-221-3307 Fax: 787-872-1628. This provider also has the following physical address listed: Carr. 474 Ave. Felipe Mendez, Isabela, PR 00662-0000

**III.**

**FACTS COMMON TO ALL COUNTS**

13. TNPR is an affiliate of Health Network One ("HN1"), a large national multispecialty Provider Network Organization. HN1 or its

4

affiliates currently operate as Third Party Administrators (TPA) of health services in the States of Florida, Georgia and Illinois.

14. TPAs are typically engaged by an insurance company to administer or establish a network of health service providers. TPAs also handle provider claims for services rendered to members of the insurance company's health plan.

15. Under these arrangements, HN1 is paid an administrative or an access fee for developing a network of providers or leasing its existing provider network to a health plan.

16. MMM Healthcare, Inc. and PMC Medicare Choice, Inc. (collectively referred herein as "MMM") are authorized insurance companies who have entered into "Medicare Advantage" contracts with the Centers for Medicare & Medicaid Services ("CMS") to provide healthcare coverage to eligible Medicare beneficiaries in Puerto Rico.

17. Medicare Advantage is a coordinated care option that offers alternatives to Medicare beneficiaries on the manner in which they receive Medicare benefits. It is an alternative to original Medicare (fee-for-service) established more than 35 years ago that offers Medicare members additional benefits to those offered by original Medicare.

18. Currently, the expenses for outpatient therapy and physiatrist services in MMM's Medical Advantage plan are approximately two (2) to three (3) times higher than in other comparable markets in the Unites States. Among the reasons costs these services are so high is lack of competition among providers and the fact that the commonly used "fee for service" system for payment of provider services does not offer incentive to reduce costs.

5

19. Therefore, needing to stay competitive, MMM sought HN1 for its experience in managing health costs, without rationing services to patients, to the benefit of both the payer and provider of medical services.

20. On December 16, 2009, MMM and HN1's affiliate, TNPR, entered into a contract through which TNPR became responsible for arranging for the provision of outpatient therapy and physiatrist services to members of MMM's Medicare Advantage plans, effective on May 1, 2010. Under this new arrangement, MMM is still responsible for providing coverage for outpatient therapy and physiatrist services. However, MMM delegated to TSPR the responsibility to establish a network of providers of outpatient therapy and physiatrist services for MMM members. Only service providers who contract with TNPR will be able to provide outpatient therapy and physiatrist services to MMM's Medicare Advantage plan members after May 1, 2010 (the "TNPR Network").

21. In order to set up the TNPR Network, TNPR began an informational campaign in which TNPR illustrated the new method of authorization, billing and compensation for outpatient therapy and physiatrists services. TNPR also distributed a proposed new contract for service providers through which they would become part TNPR's Network (the "Proposed Contract").

22. One of the benefits of TNPR's Network is that it offers a simpler, more efficient model for authorizations, which helps to bring treatment costs down and increases both provider and customer satisfaction. Different from the current model, providers under TNPR Network are reimbursed on appropriate, but fixed, fee levels for

medical care. This payment methodology assists in preventing unnecessary and/or inappropriate medical procedures.

23. Additionally, therapy services are divided into five (5) different levels of care through which providers are prepaid for the services required by the patient. This method eases billing and payment procedures for the benefit of both payer and provider.

24. Lastly, consistent with a successful managed care plan, TNPR's model requires service providers to share in part of the risks for the health care costs by not being paid exclusively on a "fee for service" basis.

25. As TNPR began meeting with outpatient therapy service providers to explain their new model, APF began gathering its members to consider the advantages and disadvantages of becoming part of TNPR's Network.

26. Upon information and belief, during a recent Assembly of APF membership, its members agreed to pursue a common strategy and decided that none of its members could enter into contract with TNPR to become part of the TNPR Network.

27. Moreover, although TNPR had heard from providers and others that APF had decided that its members could not enter into contract with TNPR, APF confirmed this writing on April 22, 2010 at a public hearing before the Puerto Rico legislature in which, its President, Regina Rivera Carde, stated:

> On April 1, 2010, we received an official letter from "Therapy Network of Puerto Rico" where its is stated that they have been selected by MMM Healthcare, Inc. and PMC Medicare Choice, Inc. (jointly "MMM") to serve as the network of providers for outpatient physical therapy, and other therapies, for MMM Puerto Rico members from May 1, 2010. The offer with respect to the payment for our services shows lack of respect ("falta de respeto") to our professional class and an insult to their

7

> affiliates because it limits, more so, access to services, classifying the conditions by levels and establishing rates without taking into consideration the quantity or quality of the offered services. They encourage providers to offer minimum service to divide the balance of what is assigned to each patient between providers. Again, they want to sacrifice the wellbeing of the patient to benefit their profits. The Private Section of APF has decided not to play MMM's game, [and] none will accept your denigrating offer, because what we want is to offer quality service that allows patients to be rehabilitated for their reintegration as useful and functioning members of society.

(Our translation) See, **Exhibit A**.

28. In furtherance of their collective refusal to deal with TNPR, APF and their individual members notified MMM members that they will no longer provide outpatient therapy service to MMM members effective, May 1, 2010. See, **Exhibit B**.

29. After receiving written confirmation of APF's collective agreement not to deal with TNPR, on April 22, 2010, the undersigned attorneys sent APF a letter via fax requesting written confirmation within 24 hours that APF had ceased and desisted from interfering with TNPR's negotiations with individual APF members and withdrawn its agreement to prevent APF members to enter into contracts with TNPR to become MMM outpatient therapy service providers. **Exhibit C.** The undersigned attorneys, nor TNPR, received an answer to this letter.

30. Prior to and after May 1, 2010, the effective date of the implementation of the TNPR Network, APF and its members have been harassing outpatient therapy service providers to prevent them from becoming part of the TNPR's Network or, for those outpatient therapy service providers that became participants of TNPR's Network, to induce them to breach their obligations with TNPR by not providing services to MMM Medicare Advantage plan members.

31. For example, Pedro Piñero and other APF members speaking on behalf of APF, have visited participating outpatient therapy providers of TNPR Network to threaten them with an undisclosed lawsuit and urge them not to provide services to MMM Medicare Advantage plan members.

32. As a result of these actions, some therapy service providers and physiatrists that were part of TNPR Network have ceased providing services to MMM Medicare Advantage plan members. Other therapy service providers have refused to enter into contract with TNPR citing fear of retaliation by APF and its members.

33. Defendants' actions are not only anticompetitive but in detriment of TNPR's ability to offer an attractive network, in terms of the number of service providers, their locations and proximity to MMM's members.

34. Further, to provide outpatient therapy services under MMM Medicare Advantage plans, TNPR must meet the access standards established by CMS to ensure that members have access to a sufficient network of providers. These actions threaten TNPR's compliance with these standards.

35. Upon information and belief, there are approximately seventy five (75) outpatient therapy service providers who are also members of APF. These members compete within a market for the provision of these services in Puerto Rico ("the Relevant Market") or in some geographic portion thereof ("Relevant Submarkets"). They account for a substantial portion –75%– of the outpatient therapy services providers that could be participating in TNPR's Network and, thus, acting together, they have the ability to exercise market power and increase prices above (or reduce output below) otherwise

9

prevailing competitive levels to the detriment of TNPR, MMM and its individual members (i.e., the ultimate consumers of outpatient therapy services).

36. The members of APF derive financial and other benefits under their potential respective provider agreements with TNPR, including their resultant ability to participate in TNPR's Network.

37. APF and the members who are participating in the unlawful agreement to restrain trade as alleged herein, have acted and are acting in their own respective economic self-interest with the improper purpose and effect of fixing prices or increasing them above competitive levels or, above levels they otherwise would receive for the provision of outpatient therapy services in the Relevant Market or Relevant Submarket(s).

38. Defendants' conduct is causing or is threatening to cause harm to competition, including increased prices for, and reduced output of, outpatient therapy services by:

(a) reducing or eliminating price competition among independent outpatient therapy service providers;

(b) interfering with or eliminating individual contracting between outpatient therapy service providers and TPA's such as such as TNPR;

(c) reducing or eliminating the availability of Medicare Advantage benefits and services available to members;

(d) depriving TNPR of the ability to offer viable outpatient therapy services in competition with other TPA's and insurance providers (in terms of the number and

10

location of providers from which MMM members can choose from);

(e) reducing or eliminating the choices available to MMM members, in terms of the number and location of providers from which they can obtain outpatient therapy services with the result, in some instances, of disrupting long-standing relationships between elderly members and therapy service providers and forcing members to locate and travel more distances to obtain these services.

39. Defendants' anticompetitive conduct and agreements, including APF members' collective withdrawal from becoming part of TNPR's Network, also:

(a) interferes with TNPR's existing contractual relations with MMM;

(b) interferes with TNPR's existing contractual relations with outpatient therapy providers and other service providers;

(c) deprives TNPR and MMM of the ability to compete effectively with other TPAs, health plans, and insurance companies for new members;

(d) deprives MMM members accessing viable or sufficient outpatient therapy service providers (in terms of numbers and location);

(e) diminishes the positive reputation and goodwill that TNPR and MMM have built as a result of its provision of health plan services; and

11

    (f) causes immediate harm to TNPR in its business and property.

## IV.
## CLAIMS

### COUNT I
### *PER SE* UNLAWFUL PRICE-FIXING AND GROUP BOYCOTT ACTIVITIES IN RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### 15 U.S.C. § 1

40. TNPR hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

41. APF and its members, including individual defendants, have engaged in *per se* unlawful price-fixing agreements and group boycott activities in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C.§ 1.

42. One or more APF members compete with one another as horizontal competitors in the provision of outpatient therapy services in the Relevant Market or Relevant Submarkets. Together, the members of APF account for a dominant share of outpatient therapy services provided to MMM members and a substantial share of the outpatient therapy service providers in the Relevant Market and/or Relevant Submarket(s).

43. The purpose and effect of the agreements entered by APF and its members has been to pool their respective economic self-interests with the improper purpose and effect of fixing prices or increasing them above competitive levels or, above levels they otherwise would receive for the provision of outpatient therapy services in the Relevant Market or Relevant Submarket.

44. APF and its members, including individual defendants, have engaged in *per se* illegal group boycott by collectively refusing to

deal with TNPR except upon jointly determined terms. There is no plausible argument that APF's actions have enhanced overall efficiency or competition in the Relevant Market or any Relevant Submarket(s).

45. APF and its members, including individual defendants' anticompetitive conduct and agreements as alleged here, including its collective refusal to enter and/or withdraw from TNPR's Network, hinders TNPR and MMM in its competition with other TPA, health plans and insurance companies because it reduces or eliminates TNPR's ability to provide its customers and MMM members with access to a sufficient outpatient therapy service providers as necessary to satisfy existing contractual obligations; to attract new customers; to meet the access standards established by CMS for Medicare Advantage products, and to maintain their reputation for the provision of health plan and insurance products that include an attractive network of outpatient therapy services.

46. By reason of such unlawful conduct, TNPR has been and will continue to be injured in its business and property and therefore is entitled to recover threefold such damages as it is found to have sustained, injunctive relief, and its costs of suit and reasonable attorneys' fees, pursuant to Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

**COUNT II**
***PER SE* UNLAWFUL PRICE-FIXING AND GROUP BOYCOTT ACTIVITIES IN RESTRAINT OF TRADE IN VIOLATION OF THE PUERTO RICAN ANTITRUST ACT
10 L.P.R.A §§ 257 *et seq*.**

47. TNPR hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

48. As alleged herein, APF and its members, including individual defendants, have engaged in per se unlawful price-fixing group boycott activities in restraint of trade in violation of 10 L.P.R.A §§ 257 *et seq.*

49. One or more APF members compete with one another as horizontal competitors in the provision of outpatient therapy services in the Relevant Market or Relevant Submarkets. Together, the members of APF account for a dominant share of outpatient therapy services provided to MMM members and a substantial share of the outpatient therapy service providers in the Relevant Market and/or Relevant Submarket(s).

50. The purpose and effect of the agreements entered by and between APF and its members has been to pool their respective economic self-interests with the improper purpose and effect of fixing prices or increasing them above competitive levels or, above levels they otherwise would receive for the provision of outpatient therapy services in the Relevant Market or Relevant Submarket.

51. APF and its members, including individual defendants, have engaged in *per se* illegal group boycott by collectively refusing to deal with TNPR except upon jointly determined terms. There is no plausible argument that APF's actions have enhanced overall efficiency or competition in the Relevant Market or any Relevant Submarket(s).

52. APF and its members, including individual defendants' anticompetitive conduct and agreements, including its collective refusal to enter and/or withdrawal from TNPR's Network, hinders TNPR and MMM in its competition with other TPA, health plans and insurance companies because it reduces or eliminates TNPR's ability to provide

14

its customers and MMM members with access to a sufficient outpatient therapy service providers as necessary to satisfy existing contractual obligations; to attract new customers; to meet the access standards established by CMS for Medicare Advantage products, and to maintain their reputation for the provision of health plan and insurance products that include an attractive network of outpatient therapy services.

53. By reason of such unlawful conduct, TNPR has been and will continue to be injured in its business and property and therefore is entitled to recover threefold such damages as it is found to have sustained, injunctive relief, and its costs of suit and reasonable attorneys' fees, pursuant to 10 L.P.R.A §§ 268, 269a.

**COUNT III**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(TNPR's Contractual Relations with MMM)**

54. TNPR hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

55. The interference of APF and its members, including individual defendants, has sought to induce termination of TNPR's contractual relationships with MMM and with any service provider, including, participants in TNPR's Network.

56. At all relevant times, TNPR has had and continues to have contractual relationships with MMM and provider participants in TNPR's Network and has a valid economic expectancy related to those contracts. APF and its members have had knowledge of TNPR's valid economic expectancy with respect to MMM and provider participants in TNPR's Network.

57. APF and its members, including individual defendants, have sought to interfere with TNPR's valid contracts by inducing individual outpatient therapy services to withdraw from participating in TNPR's Network and informing MMM's members that they will no longer provide outpatient therapy services effective on May 1, 2010.

58. The interference of APF and its members, including individual defendants, has been wrongful. The interference was intentionally and maliciously designed for the improper purpose of excluding competition and constitutes price fixing and group boycott.

59. By reason of such tortious conduct, TNPR has suffered and will continue to suffer irreparable injury unless APF is enjoined from engaging in such unlawful behavior. TNPR also has and will suffer economic and consequential damages in an amount to be determined at trial.

## COUNT IV.
## CONTRACT IN HARM OF THIRD PARTIES

60. TNPR hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

61. APF and its members, including individual defendants, have sought to induce termination of TNPR's contractual relationships with MMM and participating providers in TNPR's Network.

62. TNPR had and continues to have contractual relationships with MMM and participating providers in TNPR's Network, and a valid economic expectancy related to those contracts.

63. APF and its members, including individual defendants, have had knowledge of TNPR's valid economic expectancy with these contracts.

64. APF and its members, including individual defendants, have sought to interfere with TNPR's valid contracts and economic expectancy by inducing individual outpatient therapy services to withdraw from participating in TNPR's Network and by informing MMM's members that they will no longer provide outpatient therapy services effective on May 1, 2010.

65. The agreement entered by and between APF and its members through which they jointly decided not to deal with or enter into contract with TNPR is wrongful. It was intentionally and maliciously designed for the improper purpose of excluding competition and constitutes price fixing and group boycott.

66. By reason of such tortious conduct, TNPR has suffered and will continue to suffer irreparable injury unless APF and its members, including individual defendants, are enjoined from engaging in such unlawful behavior. TNPR also has and will suffer economic and consequential damages in an amount to be determined at trial.

**COUNT V.**
**TORT UNDER THE PUERTO RICO'S ARTICLE 1802 OF THE CIVIL CODE**

67. TNPR hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

68. The unlawful acts and practices alleged above are intentional and negligent and have caused injury to TNPR.

69. APF is, therefore, liable to TNPR for damages under Article 1802 of the Puerto Rico Civil Code 31 L.P.R.A. §5141.

**V.**

**PRAYER FOR RELIEF**

**WHEREFORE,** TNPR requests that this Court enter judgment in its favor and grant the following relief:

A. Enter a Temporary Restraining Order and grant a Preliminary and Permanent Injunction enjoining APF and its members, including Regina Rivera Carde, Raphael Meléndez Pérez, Oneida Rodríguez Caraballo, Pedro Piñero and all other persons acting or claiming to act in active concert or participation with one or more of them, from:

(i) representing its members during negotiations or any contractual relation with TNPR;

(ii) setting price or any other terms on which APF's members and/or other outpatient therapy service providers will provide services to TNPR;

(iii) demanding that TNPR pay higher rates for outpatient therapy services;

(iv) refusing to contract independently with TNPR and requiring TNPR to negotiate exclusively through APF;

(v) refusing to deal with TNPR unless and until their collective demands are met, and

(vi) tortiously interfering with TNPR's business relations and/or contracts with: a) outpatient therapy and other service providers; b) with insurance companies, such as, MMM Healthcare, Inc. and PMC Medicare Choice, Inc.

(vii) threatening outpatient therapy service providers or other providers, if they become members of TNPR Network, and

(viii) inducing service providers, including, therapy service providers in TNPR Network to breach their obligations toward TNPR

18

    B.    Declare void and null, and order rescission of APF's resolution ordering its members to withdraw from entering into TNPR's Network and to refuse to provide services to MMM members after May 1, 2010.

    C.    Order APF and its members and all other persons acting or claiming to act in active concert or participation with one or more of them, not to renew the conduct alleged herein or engage in any other conduct having the same effect as the alleged violations or that otherwise restrain trade among service providers in violation of the antitrust laws.

    D.    Award TNPR three times its actual damages, plus compensatory and punitive damages, attorneys' fees, and costs; and

    E.    Grant such further and other relief as the Court deems just and proper.

In San Juan, Puerto Rico, this 14 day of May, 2010

S/   JORGE I. PEIRATS
Jorge M. Peirats
USDC Bar No. 201409

S/   HERMAN G. COLBERG-GUERRA
Herman G. Colberg-Guerra
USDC Bar No. 212511

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLP**
Attorneys for Plaintiff
Banco Popular Center 19th Floor
209 Muñoz Rivera Ave.
San Juan, Puerto Rico 00918
Telephone No. (787) 274-1212
Facsimile No. (787) 274-1470
jpeirats@pmalaw.com
hcolberg@pmalaw.com

**VERIFICATION**

I, Martin Bilowich, President of HN1 Therapy Network of Puerto Rico, LLC, and resident of Fort Lauderdale, Florida declare under penalty of perjury that the foregoing allegations of this Verified Complaint are true and correct.

Executed on May 14, 2010.

_____
Martin Bilowich